UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 06-19-DLB

BILL DEROSSETT                                                          PLAINTIFF


vs.                    MEMORANDUM OPINION & ORDER


JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                          DEFENDANT

****************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review
of an administrative decision of the Commissioner of Social Security.  The Court, having
reviewed the record, will affirm the Commissioner's decision, as it is supported by
substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Bill Derossett filed an application for Supplemental Security Income (SSI)
payments on May 14, 2003. (Tr. 239-43)  Plaintiff alleges he became unable to work on
December 14, 2001, due to back pain, pain and numbness of the right arm, poor vision
(right eye blindness), breathing problems, asthma, chest pain, heart murmur, depression,
anxiety, problems being in crowds, problems reading and writing, learning difficulties,
limited education, chronic pain, muscle spasms, chronic fatigue, sleep disturbance, and
headaches.[1]  (Tr. 243) Plaintiff's claim was denied initially (tr. 217-220) and on
reconsideration (tr. 222-24).  Plaintiff requested a hearing before an ALJ, which was held

_____

[1]Plaintiff previously filed for SSI in December, 2001. (Tr. 53-57)  That application was denied
by the Administrative Law Judge (ALJ) in April of 2003 (tr. 199-207), which denial was upheld by
the Appeals Council in May, 2004 (tr. 214-16).  No further appeal was taken.

on September 7, 2004, in Prestonsburg, Kentucky. (Tr. 432-447)  On September 28, 2004,

ALJ Chwalibog ruled that Plaintiff was not entitled to SSI benefits. (Tr. 19-27) This decision

became the final decision of the Commissioner when the Appeals Council denied review

on December 2, 2005. (Tr. 7-9)

On January 24, 2006, Plaintiff filed the instant action.  The matter has culminated

in cross motions for summary judgment, which are now ripe for review.

## II. DISCUSSION

**A.    Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether

it is supported by substantial evidence and was made pursuant to proper legal standards.

*See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

"Substantial evidence" is defined as "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve

conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to

affirm the Commissioner's decision, provided it is supported by substantial evidence, even

if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203

F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers

whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal

a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past

relevant work; and Step 5, whether significant numbers of other jobs exist in the national

2

economy which the claimant can perform.  As to the last step, the burden of proof shifts

from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d

469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110

(6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since his alleged onset date. (Tr. 20) At Steps 2 and 3, the ALJ found that Plaintiff's chronic

low back pain with evidence of degenerative disc disease, his right eye blindness, his

shortness of breath with history of asthma, and his borderline intellectual functioning are

severe impairments. (Tr. 21) However, the ALJ concluded that Plaintiff did not have an

impairment or combination of impairments severe enough to meet or medically equal any

listed impairment in Appendix 1, Subpart P, Regulation No. 4. (Tr. 23)

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC)

to perform medium level work; that is, lifting and/or carrying 50 pounds occasionally and

25 pounds frequently.  The ALJ also found that he should only occasionally climb

ladders/scaffolds, stoop, crouch, and crawl. (Tr. 24) Nonexertionally, Plaintiff cannot

perform work requiring depth perception or peripheral vision to the right.  He must also

avoid concentrated exposure to temperature extremes and humidity and moderate

exposure to dust, fumes, or gases.  He is moderately limited in the ability to carry out

detailed instructions, maintain attention and concentration for extended periods, and

respond appropriately to changes in the work setting.  He does, though, retain the capacity

to understand and recall simple material and maintain the mental effort needed to complete

work tasks, relate to others, and handle routine situations. (*Id.*)  The ALJ determined that given his RFC, Plaintiff could not return to his past relevant work as a gravedigger. (*Id.*)

The ALJ therefore proceeded to the final step of the sequential evaluation.  At Step 5, the ALJ found there were a significant number of jobs available to Plaintiff despite his limitations. (Tr. 25)  This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age (42 at the time of the hearing and so a "younger" individual), education (sixth grade, marginal education), past relevant work experience, and RFC.  The VE testified that Plaintiff could obtain employment at the medium exertional level as a hand packer/packager or restaurant busser; at the light level as a non-construction laborer or machine tender; and at the sedentary level as a factory assembler or hand packer/packager. (Tr. 444-45)  Since these were positions of significant number in both the regional and national economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act. (Tr. 26)

## C.    Analysis

In this appeal, Plaintiff's sole contention of error is that the ALJ failed to articulate his consideration, if any, of the "third-party function report" completed by his mother, Stella Derrossett. (Tr. 278-86)  He submits that the ALJ's failure to do so violates 20 C.F.R. § 416.913(d)(4) and constitutes reversible error.  Plaintiff offers that this report "supports the seriousness of [his] allegations." (Doc. #9, p.3)[2]

---

[2]In that report, Ms. Derrossett states, *inter alia,* that her son's daily activities consist of watching television, sitting on the porch, or lying down, and that he cannot sit or lie down for too long due to the pain in his back. (Tr. 278)

In response, the Commissioner argues that while an ALJ may use evidence from non-medical sources, the regulation does not impose an affirmative duty upon an ALJ to expressly consider and weigh this type of evidence in making his ultimate determination of disability.  The Commissioner also notes that the 2000 regulatory amendment served to add statements of "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy" as examples of non-medical sources, rather than substantively alter the obligations imposed upon an ALJ when presented with non-medical source evidence, as had been interpreted in pre-amendment decisions like *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048 (6th Cir. 1983) and *Higgs v. Bowen,* 880 F.2d 860 (6th Cir. 1988).  Finally, the Commissioner argues that Stella Derrossett's report does not change the fact that there is substantial evidence supporting the ALJ's decision.

In his motion, Plaintiff concedes that his very argument that third-party statements must be weighed, with that weight articulated in the ALJ's decision, was considered and rejected by the Western District of Tennessee in *Dunlap v. Barnhart*, 2004 WL 784837, at *10 (W.D. Tenn.).  Plaintiff attempts to distinguish *Dunlap* by noting that the court in that case did not specifically address the effect of the 2000 amendments to the regulation.[3]

---

[3]In support, he cites to the following language in the Federal Register:

We are redesignating prior paragraph (e) of those sections, "Information from other sources," as paragraph (d). Our intent in switching the positions of these two paragraphs is to make it clearer that, when we decide whether the evidence in a case is complete enough for a determination, we consider all the evidence in the case record, including the medical evidence from acceptable medical sources identified in paragraph (a), information from the individual, and any evidence that may have been provided by other sources, such as those identified in final paragraph (d).

65 FR 34950-01, at *34952.

In *Dunlap*, the claimant argued that the ALJ failed to take into consideration the lay witness testimony of two non-medical sources, pursuant to 20 C.F.R. § 404.1513(e)(2).[4] She argued that the ALJ's written decision did not specifically indicate whether he considered the testimony and statements of her daughter-in-law and her friend.  The court began by citing *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1054 (6th Cir. 1983), where the Sixth Circuit held that "[p]erceptible weight must be given to lay testimony where ... it is fully supported by the reports of the treating physicians."  *Dunlap*, 2004 WL 784837 at *10.  It noted, however, that while the testimony and statements of lay witnesses must be considered, an ALJ does not have to discuss every piece of evidence presented as long as the record is developed fully and fairly.  *Id.* (citing *Higgs v. Bowen,* 880 F.2d 860, 864 (6th Cir. 1988)).  With this framework in mind, the court concluded that, even though the ALJ did not specifically address the written statements of the claimant's daughter-in-law and friend in his written decision, he did specifically indicate that he carefully considered "all the evidence, including documents identified in the record as exhibits, testimony at the hearing, and any arguments presented."  *Id.*  According to the court, the ALJ did not err in that regard.  Similarly, in this case the ALJ stated in introducing his decision that "[u]pon reviewing all of the evidence of record, [he] concludes the claimant is not disabled . . . ." (tr. 19) and, in announcing his Findings, that "[a]fter careful consideration of the entire record, [he] makes the following findings. . . ." (tr. 26).

---

[4]As previously noted, *see infra* note 3, the 2000 amendments switched paragraphs (d) and (e) of 20 C.F.R. §§ 404.1513, 416.913.  Therefore, even though *Dunlap* was a Title II case and involved § 404.1513(e)(2) ("information from non-medical sources"), that section has since been re-designated § 404.1513(d)(4).  This Title XVI case involves the parallel section, § 416.913(d)(4). Therefore, the Court finds the reasoning in *Dunlap* instructive.

6

More importantly, the Court also finds that the language of the relied-upon regulation belies Plaintiff's argument that the ALJ was not only required to consider, but also discuss Ms. Derrossett's report in the body of his written decision.   The regulation provides, in pertinent part:

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we *may* also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to ...
>
> (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

20 C.F.R. § 416.913(d) (emphasis added).   As noted by the Commissioner, the plain language of the regulation permits, but does not require, an ALJ to consider third-party reports to determine the severity of a claimant's impairment(s), and how it affects his ability to work.   The federal register language pointed out by Plaintiff does not change this fact.

Plaintiff also submits that, even prior to the 2000 regulation amendment, the Ninth Circuit in *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996) required that an ALJ explain the reasons for disregarding lay witness testimony.  Plaintiff's reliance upon *Nguyen* is unpersuasive in his appeal to this Court.   *Nguyen* is not controlling and is contrary to Sixth Circuit precedent that is controlling.   The ALJ's failure in *Nguyen* to note testimony on a particular point offered by both the claimant and his spouse also makes that case factually distinguishable from the circumstances here.

Finally, the information offered by Plaintiff's mother about his functional abilities mirrors that asserted by Plaintiff himself.   In his decision, the ALJ discussed at length the testimony offered by Plaintiff as to his limitations, and why he found that testimony to be "only fair at best." (Tr. 23) That is, Plaintiff's statements about his abilities and activities did

7

not match up with information he provided to medical sources.  Nor did the extent of his claimed limitations correlate with the limited medical care he had sought, or the minimal treatment he had sought by way of over-the-counter medications.  As the Sixth Circuit stated in *Higgs:*

> The [Appeals] Council's lengthy discussion of the medical evidence makes it clear that it did not credit any testimony at variance with the objective record.  That the Council did not explicitly say it would not accept hearing testimony at face value is not reversible error under the circumstances of this case. [Claimant] received a full and fair explanation of the grounds for denial of her application.

*Higgs,* 880 F.2d at 864.  This reasoning applies with equal force here.  The ALJ's decision contains a full and fair explanation of the grounds for the weight given Plaintiff's functional assertions and the reasons for denial of his application.  Pursuant to *Higgs,* that the ALJ did not credit statements offered by Ms. Derrossett which varied from the objective record is a reasonable, permissible inference to make.

For all of these reasons, the Court concludes that the ALJ's decision complies with 20 C.F.R. § 416.913(d)(4).  Plaintiff's argument to the contrary is without merit.  As there is substantial evidence to support the ALJ's finding that Plaintiff does not meet the requirements for disabled status under the Social Security Act, the ALJ's decision will be affirmed.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

8

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 14th day of August, 2006.



Signed By:

David L. Bunning

United States District Judge

G:\DATA\SocialSecurity\MOOs\7-06-19-Derossett.MOO.wpd